## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ORLANDO A. ACOSTA, et al.,**<br>                              **Plaintiffs,**<br><br>                    **v.**<br><br>**DEMOCRATIC CITY COMMITTEE,**<br>**et al.,**<br>                              **Defendants.** | **2:17-CV-01462**<br>**(JUDGE SLOMSKY)** |

### ORDER

**AND NOW,** this _____ day of _____,    2017,    upon consideration of the Motion to Dismiss of Defendants Pedro Cortés and the Department of State, Bureau of Commissions, Elections and Legislation, and any opposition thereto, it is hereby **ORDERED** that the motion is **GRANTED**. Plaintiffs' Second Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.

        **IT IS SO ORDERED.**

                                        **BY THE COURT:**


                                        _____

                                        **JOEL H. SLOMSKY, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ORLANDO A. ACOSTA, et al.,** <br>             **Plaintiffs,** <br><br> **v.** <br><br> **DEMOCRATIC CITY COMMITTEE, et al.,** <br>             **Defendants.** | **2:17-CV-01462** <br> **(JUDGE SLOMSKY)** |

## MOTION TO DISMISS OF SECRETARY CORTÉS AND DEPARTMENT OF STATE BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION

Defendants Pedro A. Cortés, Secretary of the Commonwealth, and the Department of State, Bureau of Commissions, Elections and Legislation hereby move to dismiss Plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure, and incorporate by reference the attached Brief in Support of their Motion to Dismiss.

Respectfully submitted,

DENISE J. SMYLER
General Counsel

By:   /s/ Timothy E. Gates
      TIMOTHY E. GATES
      Chief Counsel
      I.D. No. 202305
      tgates@pa.gov

KATHLEEN M. KOTULA
Deputy Chief Counsel
I.D. No. 86321
kkotula@pa.gov

Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899

*Counsel for Defendants, Pedro
Cortés, Secretary of the
Commonwealth, and Department of
State Bureau of Commissions,
Elections and Legislation*

DATE:  June 19, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| **ORLANDO A. ACOSTA, et al.,**<br>                              **Plaintiffs,**<br><br>                    **v.**<br><br>**DEMOCRATIC CITY COMMITTEE,**<br>**et al.,**<br>                              **Defendants.** |

**2:17-CV-01462
(JUDGE SLOMSKY)**

## BRIEF OF SECRETARY CORTÉS AND DEPARTMENT OF STATE, BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Pedro A. Cortés, Secretary of the Commonwealth, and the Department of State, Bureau of Commissions, Elections and Legislation present this brief in support of their motion to dismiss the above-captioned action against them.

## I.    STATEMENT OF THE CASE

This is a civil action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983 seeking to invalidate the results of a special election held on March 21, 2017, and to enjoin the winning candidate of that special election from holding office.  (Doc. 11).  This stand-alone special election was held to fill a vacant seat in

the Pennsylvania House of Representatives for the 197th Legislative District in Philadelphia.  (*Id.*, ¶ 9).[1]

Plaintiffs in this case are two unsuccessful write-in candidates from the special election, Orlando Acosta and Edward Lloyd.  (*Id.*, ¶¶ 1-2).  Defendants are the Philadelphia City Democratic Committee, Secretary of the Commonwealth Pedro Cortés ("Secretary"), the Department of State, Bureau of Commissions, Elections and Legislation ("Department"), the Philadelphia City Commissioners ("City Commissioners"), the Committee of Seventy, Emilio Vazquez ("Representative Vazquez"), six other Ward Leaders of the Democratic Committee, former state representative Leslie Acosta, Speaker of the Pennsylvania House of Representatives Mike Turzai, and the Philadelphia Board of Elections. (*Id.*, ¶¶ 3-7).

Plaintiffs Acosta and Lloyd, Representative Vazquez, and others mounted write-in campaigns.  (*Id.*, ¶¶ 1-2).  Based on the certified returns, Representative Vazquez won the special election with 1,972 write-in votes; Green Party-supported write-in candidate Cheri Honkala received 286 write-in votes, Republican nominee

---

[1] The Second Amended Complaint starts its assertion of facts incorrectly, alleging that "a special election was ordered by the Secretary of the Commonwealth."  (Doc. 11, ¶ 9).  The special election was, rather, ordered by the Speaker of the House in accordance with the Pennsylvania Election Code.  *See* 25 P.S. § 2778 (presiding officer of the House issues a writ of election to fill vacancies).  *See* Press Release, Speaker of the House Mike Turzai, Speaker Announces Special Election for the 197th Legislative District (Jan. 18, 2017), available at http://www.repturzai.com/NewsItem.aspx?NewsID=265761 (last visited June 14, 2017).

Lucinda Little received 201 votes, while Plaintiffs and various other write-in candidates received the remaining write-in votes. (*Id.*, ¶ 15). Plaintiff Lloyd received 20 votes and Plaintiff Acosta received two votes. (*Id.*, ¶ 15). The Department certified the results of the special election on April 3, 2017.[2] Representative Vazquez was sworn in as the State Representative for the 197th Legislative District on April 5, 2017.[3]

Plaintiffs filed a Complaint on March 31, 2017 (Doc. 1), and then filed an Amended Complaint on April 4, 2017. (Doc. 9). This was followed by a Second Amended Complaint ("SAC") filed April 11, 2017. (Doc. 11). The SAC seeks to: (1) enjoin the implementation of the special election results from March 21, 2017; (2) find the special election void; (3) enjoin the results of that special election; and (4) enjoin Representative Vazquez from holding the Office of State Representative. (*Id.*, pp. 4-5). Plaintiffs assert violations of the First and Fourteenth Amendments to the U.S. Constitution. (*Id.*, ¶¶ 8, 30). Plaintiffs also assert violations of the Federal

---

[2] *See* Pa. Dep't of State Official Returns, Special Election, Representative in the General Assembly, 197th Legislative District (Apr. 3, 2017), available at http://www.dos.pa.gov/VotingElections/CandidatesCommittees/RunningforOffice/Documents/197th%20special%20election%20official%20returns.pdf (last visited June 14, 2017).

[3] *See* Press Release, Pa. House Democratic Caucus, Vazquez sworn in to serve 197th District in North Philadelphia (Apr. 5, 2017), available at http://www.pahouse.com/InTheNews/NewsRelease/?id=83595 (last visited June 14, 2017).

Voting Rights Act.  (*Id.*, ¶ 8).  The SAC alleges various violations of the Pennsylvania Election Code by official district election officials and by party election workers.  These include allegations that both district election officials and party workers misinformed voters, improperly pressured voters to support a particular candidate, improperly supplied or confiscated write-in stamps, improperly "assisted" voters inside the voting booth, and/or improperly permitted the presence of campaign literature and party workers within the polling place.  (*Id.*, ¶¶ 18-22).  The SAC alleges that these actions resulted in a "tainted" special election.  (*Id.*, ¶ 17A).  There are no specific allegations in the SAC regarding the Secretary or the Department.  Rather, Plaintiffs contend that the City Commissioners, the Secretary, and the Department failed to properly supervise the election.  (*Id.*, ¶¶ 17, 28).

Count I of the SAC alleges violations of the Election Code, First and Fourteenth Amendment rights of association, vote, speech, and fundamental due process.  (*Id.*, ¶¶ 29).  Count I seeks that the special election be declared "null and void."  (*Id.*, ¶ 30).  Count II seeks an order to "preliminarily and permanently enjoin the election results and order a new special election."  (*Id.*, ¶ 37).  It further seeks to bar several defendants and other unnamed individuals from participating in the election for ten years, "due to the fraudulent misconduct." (*Id.*, ¶ 38).

The Secretary and the Department now move to be dismissed as parties in this action.

## II.    <u>STANDARDS OF REVIEW</u>

The Secretary and the Department seek dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim, or Rule 12(b)(7) for failure to join indispensable parties.

Congress has vested the United States' federal district courts with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.[4]  Federal courts may adjudicate cases and controversies only as allowed under Article III of the United States Constitution. U.S. Const, art. III, § 2.  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the subject court's "very power to hear" and consider the merits of the case.  *Petruska v. Gannon Univ.,* 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

A motion to dismiss under Rule 12(b)(1) can take one of two forms: it can attack a complaint on its face, known as a "facial attack," or it can attack the existence of subject matter jurisdiction in fact, commonly referred to as a "factual

---

[4] 42 U.S.C. § 1983 provides relief against "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

attack." *Mortensen*, 549 F.2d at 891.  A factual attack argues that plaintiff's claims do not comport with jurisdictional prerequisites, whereas a facial attack raises a pleading deficiency.  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir. 2007).  In a factual challenge to jurisdiction, "'the plaintiff [has] the burden of proof that jurisdiction does in fact exist,' the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case,' and 'no presumptive truthfulness attaches to [the] plaintiff's allegations . . . .'"  *Hartig Drug Co. v. Senju Pharm.Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Mortenson*, 549 F.2d at 891).  Indeed, "a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review."  *Id.*  The Third Circuit has noted, however, that a Rule 12(b)(1) motion is facial in nature when filed prior to any answer.  *See Cardio-Med. Assoc. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3rd. Cir. 1983) ("[D]efendants' motion under Rule 12(b)(1) was filed prior to any answer.  The motion is therefore a facial challenge to jurisdiction.") (citing *Mortensen*, 549 F.2d at 891)).  In this case, because the Secretary and the Department filed a pre-answer motion for lack of subject matter jurisdiction, their motion is facial.  Nevertheless, Plaintiffs' SAC fails to survive scrutiny under even the facial standard.

Additionally, however, "[i]f a claim does not present a live case or controversy, the claim is moot, and a federal court lack jurisdiction to hear it."

*United States v. Virgin Islands*, 363 F.3d 276, 285 (3d. Cir. 2004). A challenge for mootness is properly brought by a Rule 12(b)(1) motion, and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176-77 (3d. Cir. 2000). As is relevant here, this Court has no subject matter jurisdiction over this controversy because it has become moot.

The Secretary and the Department also seek dismissal of the SAC on the basis that Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal under the applicable Rule 12(b)(6) standard, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must therefore "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-

moving party.  *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).  Here, the factual allegations in the SAC against the Secretary and the Department, together with reasonable inferences that may be drawn from them, are wholly insufficient to withstand the motion to dismiss.

Finally, the Secretary and the Department move to dismiss the SAC under Rule 12(b)(7).  Rule 19 determines when joinder of a particular person is required. This involves a three-part test: (1) the court must determine whether the absent party is a necessary party; (2) if an absent party is necessary, the court must then determine whether the absent party may be joined to the case; and (3) if the absent party cannot be joined, the court must determine whether the absent party is indispensable. *See HB Gen. Corp. v. Manchester Partners, L.P.,* 95 F.3d 1185, 1190 (3d Cir.1996). If the absent party is indispensable, the action must be dismissed.  *Id.*  Based on Plaintiffs' allegations in the SAC, the district election board members are indispensable parties in this action.

### III.   <u>ARGUMENT</u>

#### A.   **Plaintiffs Have Improperly Brought Their Constitutional Claims and Have Wrongly Sued the Secretary and the Department.**

Plaintiffs have alleged that the actions of the Defendants (as well as numerous others not party to the present litigation) "violated the Pennsylvania Election Code," which violations resulted in violations of "the First and Fourteenth Amendments of the United States Constitution in terms of right of association, right to vote and right

8

to speech, and further fundamental due process . . . ." (Doc. 11, ¶¶ 28, 29). Plaintiffs cannot succeed on these claims as they have been pled.

In that Plaintiffs claim that the Secretary and the Department violated the Pennsylvania Election Code, the United States Supreme Court has held that the Eleventh Amendment bars such claims. Specifically, in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the operative question was whether the plaintiff's claim that officials of Pennsylvania had "violated *state law* in carrying out their official duties at Pennhurst is one against the state and therefore barred by the Eleventh Amendment." 465 U.S. at 103 (emphasis in original); *see also* 465 U.S. at 116 ("[t]he reasoning of our recent decisions on sovereign immunity thus leads to the conclusion that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself").

In holding that these claims were barred by the Eleventh Amendment, the Court reasoned as follows:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

***

> In sum . . . neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.[]  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.  We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment . . . . We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

465 U.S. at 106, 121 (footnote omitted).  Plaintiffs' state-law claims are barred and cannot provide a legal basis for the injunctive relief sought.

Further, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  "In other words, supervisors may not be held liable under § 1983 based on the unconstitutional conduct of their subordinates."  *Lew-Bey v. Wolff*, No. 16-3685, 2016 WL 3997248, at *3 (E.D. Pa. July 25, 2016) (citing *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S.Ct. 2042 (2015)).  "Instead, a supervisor must have directly participated in the violation of plaintiff's rights or knowingly acquiesced in the unconstitutional conduct of his or her subordinates."  *Id.* (citing *Barkes*).

Here, Plaintiffs have sued government officials charged only with ministerial duties and high-level oversight of the election.  Their allegations center on the alleged misdeeds of district election boards and party-affiliated volunteers.

10

The latter—party-affiliated volunteers—are plainly not subject to the discipline or control of any government official or entity, and any wrongdoing these private actors do may not form the basis for a § 1983 claim. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State").

The former—the members of district election boards—are officers elected or appointed pursuant to the Pennsylvania Constitution. Pa. Const. art. VII, § 11. While county election officials provide trainings for the individuals serving in these roles, once they enter into office, they are not subject to "supervision" by state and county election officials, whether that be micromanagement of the conduct of the election at a particular polling place, or removal from office.[5] The Pennsylvania Constitution provides no mechanism for these constitutional officers to be summarily ousted or directed by state or county officials; rather, the impeachment and other removal processes are the exclusive means to remove a district election official for malfeasance or nonfeasance. Pa. Const. art. VI, §§ 6, 7; *In re Removal*

---

[5] The relationship between either the City Commissioners on the one hand or the Secretary and the Department on the other and district election board officials is virtually the same as that between those entities and any other independently-elected officer in a county, be that a sheriff, prothonotary or judge of the court of common pleas—all of whom have responsibilities under the Election Code. While each of these entities typically communicate and collaborate with state or county election officials, neither the City Commissioners, the Secretary nor the Department has any independent power over them.

*of Minority Dist. Election Inspector*, 1 Pa. D. & C.2d 783, 784 (Lackawanna Quar. Sess. 1955) ("District election officers are constitutional officers and are subject to removal only in the manner provided by the Constitution.  This court has no jurisdiction in a summary proceeding to effect the removal of an election officer."); *In re Carbondale Dist. Election Bd.*, 62 Pa. D. & C. 49, 50 (Lackawanna Quar. Sess. 1948).[6]  While, as a practical matter, many district election officials will seek guidance from county election staff, county and state officials have no power, much less a duty, to "supervise" district election officials in the exercise of their duties.

Even assuming, *arguendo*, a power and duty to supervise, liability under § 1983 could not attach.  "Under Section 1983, a supervisor may be liable for her failure to train or supervise her employees where the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact. . . . The Third Circuit has clarified that 'deliberate indifference' may exist where 'the need for more or different training is obvious and inadequacy very likely to result in violation of constitutional rights.'" *Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008) (quoting *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir. 1999) (internal quotations modified).

---

[6] Even in the case where a local election officer is appointed to fill a vacancy, the same provisions for removal apply; the office's elective character means that the removal process is the one applicable to elected officers.  Op. Pa. Att'y Gen., *Case of Curley*, 1895 WL 3655, at *5 (Mar. 26, 1895).

Plaintiffs' invocation of § 1983 as a basis of relief against the Secretary of the Commonwealth and the Department of State is contrary to established law.  Because § 1983 provides for a cause of action only against persons who "subject[], or cause[] to be subjected" any person to a deprivation of federally-secured rights, the courts have repeatedly rejected lawsuits premised on *respondeat superior* or vicarious liability theories.  Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978)).  Rather, "we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bryan Cnty.*, 520 U.S. at 403.

Rather than a "deliberate indifference" to proper polling place procedures, or a "policy" or "custom" to permit illegal conduct, Philadelphia election officials have a robust training program in place to instruct election officials on the Election Code provisions regulating conduct at the polling place, and have made every reasonable effort to ensure proper conduct at the polling place.  *See*, *e.g.*, *Training Materials*, Office of the Phila. City Comm'rs, https://www.philadelphiavotes.com/en/election-board-officials/training-materials (last visited June 14, 2017).  If a district election

official were intent to subvert the law, there is no amount or quality of training that could dissuade a determined bad actor.

Finally, even assuming that there were a basis upon which the Court could order relief as pled in the SAC, the Secretary has no power to order special elections for the Pennsylvania House of Representatives; that power is allocated to the Speaker of the House in his capacity as that body's presiding officer. 25 P.S. § 2778 ("Whenever a vacancy shall occur . . . **the presiding officer of such house** shall . . . issue a writ of election . . . .") (emphasis added). The issuance of this writ triggers various powers and duties on the part of the Secretary and the county boards of election to organize a special election, but these powers and duties exist only upon the proper issuance of the writ.[7]

### B.   Plaintiffs' Claims Related to the Special Election Are Moot.

The crux of the SAC relates to various alleged violations of the Pennsylvania Election Code by district election officials and by party election workers during the

---

[7] Indeed, none of the parties involved in this process acts *ex proprio motu*. Just as the Secretary and the county boards of election only have a responsibility to organize a special election if and when a writ is issued, the Speaker may only issue a writ when there is a vacancy in the membership of the House of Representatives. 25 P.S. § 2778 ("**Whenever a vacancy shall occur** . . . the presiding officer of such house shall . . . issue a writ of election . . . .") (emphasis added). Absent a vacancy, there is no basis upon which to call a special election. If a vacancy is created, there is no need for further proceedings to order the Secretary, the Department or anyone else to respect their obligations under the Election Code; such an "obey the law" injunction is subject to vacatur. *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990).

March 2017 special election.  The SAC, structured as a pleading for emergency relief, sets forth a request for an injunction, enjoining the election results and preventing Representative Vazquez from taking office.  (Doc. 11, pp. 4-5).  These claims, and attendant requests for relief, are moot, and properly dismissed pursuant to Rule 12(b)(1).

"[T]he exercise of judicial power depends upon the existence of a case or controversy."  *Chong v. District Dir., I.N.S.*, 264 F.3d 378, 383 (3d. Cir. 2001). Pursuant to well-established Third Circuit jurisprudence, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Int'l Brothd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987); *see also Longendorfer v. Cameron*, 2017 WL 2234195, at *2 (E.D. Pa. Apr. 28, 2017) ("A court's ability to grant effective relief lies at the heart of the mootness doctrine.") (citing *Wilson v. Reilly*, 2006 WL 73156, at *3 (3d Cir. Jan. 12, 2006)). There is no live controversy with respect to Plaintiffs' claims because the special election is over.  Insofar as Plaintiffs were attempting to enjoin the Secretary from certifying the special election results, that certification occurred on April 3, 2017. Thus, the results of the special election have been certified and Representative Vazquez was sworn into office on April 5, 2017.  Even assuming the Court could entertain these claims, it could afford no cognizable relief in terms of undoing the

15

election.  Accordingly, these claims, and their accompanying requests for injunctive relief, are moot.

**C.  Plaintiffs Have Failed to Allege Facts to Support a Voting Rights Act Claim.**

While Plaintiffs briefly urge that "[j]urisdiction is also found since there are violations of the Federal Voting Rights Act," (Doc. 11, ¶ 8), they do not appear to plead facts in support of a claim based on the Voting Rights Act, which is largely oriented towards remedying discrimination on the basis of race, rather than towards guaranteeing optimal administration of elections generally.  *See, e.g.*, 52 U.S.C. § 10301(a) ("No voting qualification . . . or standard, practice, or procedure shall be . . . applied by any State . . . which results in a denial . . . of the right of any citizen . . . to vote **on account of race or color** . . . .") (emphasis added).  Nor do they revisit the Voting Rights Act in their summary of Count I or Count II or in the prayer for relief.  Because Plaintiffs, for reasons best known to themselves, omitted any actual allegations which would have supported such a claim, it cannot form a basis for relief.

**D.  Plaintiffs cannot obtain injunctive relief.**

The grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances."  *Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) (quoting *Frank's GMC Truck*

*Ctr. v. Gen. Motor Corp.*, 847 F.2d 100, 102 (3d Cir.1988)), *cert. denied*, 514 U.S. 1103 (1995).

The four factors that Plaintiffs must establish to be entitled to this extraordinary relief are: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the non-moving party; and 4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticello*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller v. Mitchell*, 598 F. 3d 139, 147 (3d Cir. 2010)).   Plaintiffs must demonstrate all four factors before an injunction will issue.  *AT&T v. Winback,* 42 F.3d at 1427.

Indeed, the movant must establish the likelihood of success on the merits of its causes of action and the likelihood that it will suffer irreparable injury if the requested relief is not granted before the court can even consider public interest and the balance of hardships.  *Iseley v. Dragovich*, 236 F. Supp. 2d 472, 474 (E.D. Pa. 2002) (citing *Tenafly Eruv Assoc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002)); *see also Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197 (3d Cir. 1990).   Further, in the Third Circuit—even when the claim involves putative First Amendment issues—"[e]stablishing a risk of irreparable harm is not enough.  A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'"  *ECRI v. McGraw-Hill, Inc*., 809 F.2d 223, 226 (3d Cir. 1987) (quoting

17

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)); *see also Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003) (collecting cases) ("plaintiff must *show* irreparable harm in order to obtain preliminary injunction" and, even in the First Amendment context, a plaintiff must do more than make an "assertion of First Amendment rights" to satisfy the irreparable harm standard instead, the plaintiff "must show a chilling effect on free expression") (further quotations and citations omitted).

The above high hurdles become even higher where, as here, Plaintiffs seek a mandatory injunction to change the status quo. "A primary purpose of a preliminary injunction is maintenance of the status quo." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994) (reversing entry of preliminary injunction in part because the injunction, which compelled issuance of a building permit, fundamentally altered the status quo). The Third Circuit has cautioned that "when the preliminary injunction is directed not merely at preserving the status quo but . . . providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir. 1980); *see also United States v. Price,* 688 F.2d 204, 212 (3d Cir. 1982) (mandatory injunctions should be used sparingly). Thus, Plaintiffs must demonstrate that the exigencies of the situation demand such relief, and that the facts and law are clearly in their favor. *Sovereign Order of St. John of Jerusalem-Knights of Malta v. Messineo,* 572 F. Supp. 983 (E.D. Pa. 1983).

*1.     Plaintiffs are unlikely to succeed on the merits of their arguments.*

Rather than being well-founded in law, Plaintiffs' legal theories are foreclosed by applicable precedent.  They allege, in essence, that the alleged violations of the Election Code enumerated in their SAC are, *ipso facto*, also constitutional violations giving rise to liability under § 1983.

As discussed more thoroughly in Part III.A., *supra*, the U.S. Supreme Court addressed this line of thinking, and squarely rejected it, in *Pennhurst*.  Because their claims lack legal support, there is a low "likelihood of success on the merits."

Also, as discussed in Part III.A., *supra*, the Secretary and the Department lack the authority (1) to control the acts of the individuals alleged to be at fault in this matter, or (2) to grant the relief sought by Plaintiffs to order or otherwise effectuate a new election.

*2.     Plaintiffs will suffer no irreparable harm if the injunction is denied.*

Defendants have no power to restrain or otherwise control the individuals whom Plaintiffs allege engaged in the unlawful acts described in the SAC.  Nor do they have the ability, as sought by Plaintiffs, to provide for a new election.  To the extent they seek to enjoin the certification of the results of the election,[8] that milestone is long since past (the Secretary and the Department having followed the

---

[8] The actual request in the SAC is to "[e]njoin the results," rather than to enjoin any specific action Defendants might take.  (Doc. 11, ¶ 37).

directives of the Election Code in the absence of any court order to the contrary; *see generally* 25 P.S. § 2521(f)).  Because the Court's injunction cannot afford Plaintiffs the relief they apparently seek, they will gain no benefit from such an order; denying them just such an empty gesture carries with it no harm, irreparable or otherwise.

> 3.  *The burden of Plaintiffs' proposed relief on Defendants outweighs the benefit to Plaintiffs.*

Because there is no benefit to be had by Plaintiffs from being ordered relief as against the Secretary and Department, any burden whatsoever imposed on Defendants would counsel in favor of denying the injunction under this analytical factor as well.  Should the Court order the Secretary and Department to act along the lines suggested in the SAC, the Secretary and Department would be put in the unenviable position of having to address an issue which would be more properly resolved by the House of Representatives and district election officers themselves. The delicate prospect of devising such a plan without trampling on the rights of these independent, constitutionally-established officers should be burden enough to fail the test on this prong as well.

> 4.  *The public interest would be poorly served by an injunction in this case.*

Even imagining that the Secretary and Department were in a position to bring about a new election, as discussed in Part III.A., *supra*, they are unable to summarily replace the district election boards and/or party workers—who are the actual actors

responsible for the alleged misdeeds Plaintiffs allege in the SAC.  Without further proceedings to provide for their replacement, those very same local election officials would be in the same positions as they were on March 21, 2017, to misbehave as Plaintiffs allege.  In a district as gerrymandered as the 197th Legislative District, it seems highly likely that the preferred candidate of the Democratic Party would capture between 70 and 100 percent of the vote—as has occurred in every election since 2012. *See* Pa. Dep't of State Official Returns, http://www.electionreturns.pa.gov/Home/SummaryResults (select "Elections" tab, then time period and type and year of election; then click on map of Philadelphia County for results from 197th Legislative District) (Democratic nominees won with 75.39% of the vote in an April 2012 special election, 94.88% in the November 2012 general election, and won with 100% of the vote in the general elections of 2014 and 2016; under the current version of the district's boundaries, the most a Republican candidate had received before 2017 was 5.12% (in November 2012); the most for an "independent" political body candidate was 20.72% (in April 2012)).

Should the Court issue a valid order requiring a new special election in response to the SAC, it seems likely the same district election officers would be in place to engage in the same alleged misconduct, and the same candidate would win by a similar margin as he did on March 21.  The principal distinction from the status quo is likely to be that the state treasury is depleted by several thousand dollars as it

21

underwrites this electoral rerun.  *See* 25 P.S. § 2645(a)(1).  Because "the law does not require a party to do a useless act," *Ass'n of Westinghouse Salaried Emps. v. Westinghouse Elec. Corp.*, 283 F.2d 93, 96 (3d Cir. 1960), and because the public interest is poorly served by dissipating tax dollars in this fashion, Plaintiffs' request for injunctive relief fails this prong as well.

5.     *Plaintiffs have not met the burden to obtain injunctive relief.*

As previously stated, the four-factor test for injunctive relief is conjunctive; failure on any one dooms a plaintiff's request.  *AT&T v. Winback,* 42 F.3d at 1427. Simply put, the relief sought by Plaintiffs in the SAC fails to satisfy even one of the factors and injunctive relief is therefore inappropriate.

### E.     Plaintiffs Have Failed to Name Indispensable Parties in This Action.

Plaintiffs' SAC is replete with allegations of wrongdoing, but all the discrete acts which they allege occurred were done (or not done) by the local boards of election.  *See*, *e.g.*, Doc. 11, ¶ 16(a) ("**The Election Board workers** . . . were directly telling voters how to vote . . . .") (emphasis added).

Though Plaintiffs allege numerous incidents in which members of the district election boards purportedly violated Plaintiffs' rights, they declined to name any of these actual alleged wrongdoers as defendants.  To the extent Plaintiffs seek an order compelling a new election (presumably conducted in conformity with Plaintiffs' idiosyncratic views of their constitutional rights), the Court would be limited in its

ability to grant that relief absent some ability to direct the performance of the district election boards (or to effectuate their ouster) absent a judgment or decree binding against them, which would require their presence as parties in this matter. Absent their presence, "the court cannot accord complete relief," and each district election board member "must be joined as a party." Fed. R. Civ. P. 19(a)(1)(A). Alternatively, Rule 19(a)(1)(B) also requires joinder of the district election officers, in that an adverse decision in this matter would "impair or impede" their abilities to protect their entitlements to exercise the rights and privileges of their office pursuant to the Pennsylvania Constitution. *See* Pa. Const. art. VII, § 11; *Huber v. Taylor*, 532 F.3d 237, 248 (3d Cir. 2008) ("[U]nder Rule 19(a)(2)(i), the Court must consider the effect, if any, that resolution of the dispute among the named parties will have on an absent party.").[9]

---

[9] Former Rule 19(a)(2)(i) contains the same text as current Rule 19(a)(1)(B); the language of the rules was revised in 2007 "to make them more easily understood" and the changes were "intended to be stylistic only." Fed. R. Civ. P. 19 advisory committee note on 2007 Amendment.

IV.    **CONCLUSION**

For the reasons stated in this brief, this Honorable Court should dismiss Plaintiffs' Second Amended Complaint with prejudice, as set forth in the attached proposed order.

Respectfully submitted,

DENISE J. SMYLER
General Counsel

By:    /s/ Timothy E. Gates
TIMOTHY E. GATES
Chief Counsel
I.D. No. 202305
tgates@pa.gov

KATHLEEN M. KOTULA
Deputy Chief Counsel
I.D. No. 86321
kkotula@pa.gov

Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899

*Counsel for Defendants, Pedro Cortés, Secretary of the Commonwealth, and Department of State Bureau of Commissions, Elections and Legislation*

DATE:  June 19, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ORLANDO A. ACOSTA, et al.,**<br>                              **Plaintiffs,**<br><br>                    **v.**<br><br>**DEMOCRATIC CITY COMMITTEE,**<br>**et al.,**<br>                              **Defendants.** | **2:17-CV-01462**<br>**(JUDGE SLOMSKY)** |

## <u>CERTIFICATE OF SERVICE</u>

I, TIMOTHY E. GATES, certify that on June 19, 2017, I served this *Motion to Dismiss of Secretary Cortés and Department of State Bureau of Commissions, Elections and Legislation* and *Brief of Secretary Cortés and Department of State Bureau of Commissions, Elections and Legislation in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint* by First Class Mail, postage prepaid, on the following:

Orlando A. Acosta
524 West York Street
Philadelphia, PA 19133
Tel: (267) 414-8774
OrlandoAcosta688@gmail.com
*Plaintiff*

25

Edward M. Lloyd
222 E. Mentor Street
Philadelphia, PA 19120
Tel: (215) 900-9086
EdLloyd4ThePeople@yahoo.com
*Plaintiff*

Leslie Acosta
2527 N. Palethorp Street
Philadelphia, PA 19133
*Defendant*

Committee of Seventy
123 S. Broad Street #1800
Philadelphia, PA 19107
*Defendant*

I further certify that on June 19, 2017, I served a copy of the foregoing documents by Notice of Docket Activity sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

Adam C. Bonin, Esquire
The Law Office of Adam Bonin
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
Tel: (267) 242-5014
adam@boninlaw.com
*Counsel for Defendant, Emilio Vazquez*

Benjamin H. Field, Esquire
Deputy City Solicitor
Affirmative and General Litigation Unit
City of Philadelphia Law Department
1515 Arch Street
Philadelphia, PA 19102
Tel: (215) 683-5024
Benjamin.Field@phila.gov
*Counsel for Defendants, Philadelphia City Commissioners, Commissioner Anthony Clark, Commissioner Al Schmidt, Commissioner Lisa Deeley, and Philadelphia Board of Election*

Karl S. Myers, Esquire
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
Tel: (215) 564-8193
kmyers@stradley.com
*Counsel for Defendant, Speaker of the House Mike Turzai*

Marni Jo Snyder, Esquire
Law Offices of M.J. Synder, LLC
100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Tel: (215) 515-3360
marni@snyderlaw.com
*Counsel for Defendant, Democratic City Committee*

I further certify that on June 19, 2017, I served a copy of the foregoing documents by electronic mail on the following counsel who has consented in writing to accepting electronic service of the same:

Anthony Kyriakakis, Esquire
Dilworth Paxson, LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7149
akyriakakis@dilworthlaw.com
*Counsel for Individual Defendant Ward Leaders*

By:   /s/ Timothy E. Gates
TIMOTHY E. GATES
Chief Counsel
I.D. No. 202305
tgates@pa.gov

Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899

*Counsel for Defendants, Pedro Cortés, Secretary of the Commonwealth, and Department of State Bureau of Commissions, Elections and Legislation*

DATE:  June 19, 2017