IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Acosta
vs.
Democratic City Committee

CIVIL ACTION NO.
217-CV-01462JHS

MOTION

Exhibits

FILED
JAN 10 2018
KATE BARKMAN, Clerk
By_____ Dep. Clerk

From: **Orlando Acosta** orlandoacosta979@gmail.com
Subject: **Fwd: Orlando Acosta**
Date: Jan 9, 2018 at 12:02:05 PM
To: mikalh47@gmail.com

---------- Forwarded message ----------
From: "Orlando Acosta" <orlandoacosta979@gmail.com>
Date: Jan 9, 2018 10:58 AM
Subject: Orlando Acosta
To: <mikalh47@gmail.com>
Cc:



"Section 2 of Article III describes the jurisdiction of the federal courts. Jurisdiction is the power of a court to

hear a case, so this **section** tells us what kinds of cases the Supreme Court and other federal courts will hear. All cases that arise under the **Constitution**, the laws of the United States or its treaties."

What Does Article III Say? | The Judicial Learning Center



From: Orlando Acosta orlandoacosta979@gmail.com
Subject: Orlando Acosta
Date: Jan 9, 2018 at 11:00:53 AM
To: mikalh47@gmail.com



www.dummies.com

- **Article V – Amendment.** Future generations can amend the Constitution if the society so requires it. Both the states and Congress have the power to initiate the amendment process.

- **Article VI – Debts, Supremacy, Oaths.** Article VI determines that the US Constitution, and all laws made from it are the 'supreme Law of the Land', and all officials, whether members of the state legislatures, Congress, judiciary or the Executive have to swear an oath to the Constitution.

## Rule 1.7. Conflict of Interest: Current Clients.

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

### Comment:

*General Principles*

(1) Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For the definition of "informed consent," see Rule 1.0(e).

(2) Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict,

i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent. The clients affected under paragraph (a) include the clients referred to in paragraph (a)(1) and the clients whose representation might be materially limited under paragraph (a)(2).

(3) A conflict of interest may exist before representation is undertaken, in which event the representation must be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved. See also Comment to Rule 5.1. Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.

(4) If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. See Rule 1.9. See also Comments (5) and (29).

(5) Unforeseeable developments, such as changes in corporate and other organizational affiliations or the addition or realignment of parties in litigation, might create conflicts in the midst of a representation, as when a company sued by the lawyer on behalf of one client is bought by another client represented by the lawyer in an unrelated matter. Depending on the circumstances, the lawyer may have the option to withdraw from one of the representations in order to avoid the conflict. The lawyer must seek court approval where necessary and take steps to minimize harm to the clients. See Rule 1.16. The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn. See Rule 1.9(c).

*Identifying Conflicts of Interest: Directly Adverse*

(6) Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be

board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director or should cease to act as the corporation's lawyer when conflicts of interest arise. The lawyer should advise the other members of the board that in some circumstances matters discussed at board meetings while the lawyer is present in the capacity of director might not be protected by the attorney-client privilege and that conflict of interest considerations might require the lawyer's recusal as a director or might require the lawyer and the lawyer's firm to decline representation of the corporation in a matter.

**Source**

The provisions of this Rule 1.7 amended December 30, 2014, effective in 60 days, 45 Pa.B. 279. Immediately preceding text appears at serial pages (369515) to (369516) and (309407) to (309411).

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official Pennsylvania Code full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

materially limited by the lawyer's interest in retaining the current client. Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients.

(7) Directly adverse conflicts can also arise in transactional matters. For example, if lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.

(8) Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

*Lawyer's Responsibilities to Former Clients and Other Third Persons*

(9) In addition to conflicts with other current clients, a lawyer's duties of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9 or by the lawyer's responsibilities to other persons, such as fiduciary duties arising from a lawyer's service as a trustee, executor or corporate director.

*Personal Interest Conflicts*

(10) The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest. See Rule 5.8 for specific Rules that prohibit or restrict a lawyer's

involvement in the offer, sale, or placement of investment products regardless of an actual conflict or the potential for conflict. See Rule 1.8 for specific Rules pertaining to a number of personal interest conflicts, including business transactions with clients. See also Rule 1.10 (personal interest conflicts under Rule 1.7 ordinarily are not imputed to other lawyers in a law firm).

(11) When lawyers representing different clients in the same matter or in substantially related matters are closely related by blood or marriage, there may be a significant risk that client confidences will be revealed and that the lawyer's family relationship will interfere with both loyalty and independent professional judgment. As a result, each client is entitled to know of the existence and implications of the relationship between the lawyers before the lawyer agrees to undertake the representation. Thus, a lawyer related to another lawyer, e.g., as parent, child, sibling or spouse, ordinarily may not represent a client in a matter where that lawyer is representing another party, unless each client gives informed consent. The disqualification arising from a close family relationship is personal and ordinarily is not imputed to members of firms with whom the lawyers are associated. See Rule 1.10.

(12) A lawyer is prohibited from engaging in sexual relationships with a client unless the sexual relationship predates the formation of the client-lawyer relationship. See Rule 1.8(j).

*Interest of Person Paying for a Lawyer's Service*

(13) A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8(f). If acceptance of the payment from any other source presents a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the representation.

*Prohibited Representations*

(14) Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in paragraph 1.7(b), some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is representing more than one client, the question of consentability must be resolved as to each client.

(15) Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed

consent to representation burdened by a conflict of interest. Thus, under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 (competence) and Rule 1.3 (diligence).

(16) Paragraph (b)(2) describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, in some states substantive law provides that the same lawyer may not represent more than one defendant in a capital case, even with the consent of the clients, and under federal criminal statutes certain representations by a former government lawyer are prohibited, despite the informed consent of the former client. In addition, decisional law in some states limits the ability of a governmental client, such as a municipality, to consent to a conflict of interest.

(17) Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding. Although this paragraph does not preclude a lawyer's multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a "tribunal" under Rule 1.0(m)), such representation may be precluded by paragraph (b)(1).

*Informed Consent*

(18) Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comment, paragraphs (30) and (31) (effect of common representation on confidentiality).

(19) Under some circumstances it may be impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. In some cases the alternative to common representation can be that each party may have to obtain separate representation with the possibility of incurring additional costs. These costs, along with the benefits of securing separate representation, are factors that may be considered by the affected client in determining whether common representation is in the client's interests.

*Confirming Consent*

(20) Paragraph (b) requires the lawyer to obtain the informed consent of the client to a concurrent conflict of interest. The client's consent need not be confirmed in writing to be effective. Rather, a writing tends to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing. See also Rule 1.0(b) (writing includes electronic transmission).

*Revoking Consent*

(21) A client who has given consent to a conflict may revoke the consent and, like any other client, may terminate the lawyer's representation at any time. Whether revoking consent to the client's own representation precludes the lawyer from continuing to represent other clients depends on the circumstances, including the nature of the conflict, whether the client revoked consent because of a material change in circumstances, the reasonable expectations of the other client and whether material detriment to the other clients or the lawyer would result.

*Consent to Future Conflict*

(22) Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b). The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

*Conflicts in Litigation*

(23) Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent. On the other hand, simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (a)(2). A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or

liabilities in question. Such conflicts can arise in criminal cases as well as in civil cases. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met.

(24) Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest. A conflict of interest exists, however, if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client. Factors relevant in determining whether the clients need to be advised of the risk include: where the cases are pending, whether the issue is substantive or procedural, the temporal relationship between the matters, the significance of the issue to the immediate and long-term interests of the clients involved and the clients' reasonable expectations in retaining the lawyer. If there is significant risk of material limitation, then absent informed consent of the affected clients, the lawyer must refuse one of the representations or withdraw from one or both matters.

(25) When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter.

*Nonlitigation Conflicts*

(26) Conflicts of interest under paragraphs (a)(1) and (a)(2) arise in contexts other than litigation. For a discussion of directly adverse conflicts in transactional matters, see Comment (7). Relevant factors in determining whether there is significant potential for material limitation include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that disagreements will arise and the likely prejudice to the client from the conflict. The question is often one of proximity and degree. See Comment (8).

(27) For example, conflict questions may arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may be present. In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another

view the client is the estate or trust, including its beneficiaries. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.

(28) Whether a conflict is consentable depends on the circumstances. For example, lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference in interest among them. Thus, a lawyer may seek to establish or adjust a relationship between clients on an amicable and mutually advantageous basis, for example, in helping to organize a business in which two or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two or more clients have an interest or arranging a property distribution in settlement of an estate. The lawyer seeks to resolve potentially adverse interests by developing the parties' mutual interests. Otherwise, each party might have to obtain separate representation, with the possibility of incurring additional cost, complication or even litigation. Given these and other relevant factors, the clients may prefer that the lawyer act for all of them.

*Special Considerations in Common Representation*

(29) In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great the multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating or terminating a relationship between the parties.

(30) A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

(31) As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client

information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. See Rule 1.4. The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client will not adversely affect representation involving a joint venture between the clients and agree to keep that information confidential with the informed consent of both clients.

(32) When seeking to establish or adjust a relationship between clients, the lawyer should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances and, thus, that the clients may be required to assume greater responsibility for decisions than when each client is separately represented. Any limitations on the scope of the representation made necessary as a result of the common representation should be fully explained to the clients at the outset of the representation. See Rule 1.2(c).

(33) Subject to the above limitations, each client in the common representation has the right to loyal and diligent representation and the protection of Rule 1.9 concerning the obligations to a former client. The client also has the right to discharge the lawyer as stated in Rule 1.16.

*Organizational Clients*

(34) A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as parent or subsidiary. See Rule 1.13(a). Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

(35) A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the

> Look up *star chamber* in Wiktionary, the free dictionary.

The **Star Chamber** (Latin: *Camera stellata*) was an English court of law which sat at the royal Palace of Westminster, from the late 15th century to the mid-17th century (c. 1641), and was composed of Privy Councillors and common-law judges, to supplement the judicial activities of the common-law and equity courts in civil and criminal matters. The Star Chamber was originally established to ensure the fair enforcement of laws against socially and politically prominent people so powerful that ordinary courts would probably hesitate to convict them of their crimes. However, it became synonymous with social and political oppression through the arbitrary use and abuse of the power it wielded.

bodies with strict, arbitrary rulings and secretive proceedings are sometimes called, metaphorically or poetically, "star chambers". This is a pejorative term and intended to cast doubt on the legitimacy of the proceedings. "Star Chamber" can also be used in its original meaning, for instance when a politician uses parliamentary privilege to attack a powerful organisation or person.[a]

## ˅ Origin of the name

## ˅ History

## ˄ Influence on the U.S. Constitution 

The historical abuses of the Star Chamber are



# FBI Forms — Tips

https://tips.fbi.gov

Please enter your information. There is a 3000 character limit.

My name is Orlando Acosta from Philadelphia Penns am writing this correspondence to whom it may co the FBI I was a write-in candidate involved in a election for the seat of state representative in District this election occurred on March 21st 2

2627    characters remaining

**Your Country**

United States ▼

**Your Zip Code / Route**

