IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

etal orlando-antonio

vs.

etal Democratic city
Committee

CIVIL ACTION NO.

2-17-cv-01462

FILED

MAY 03 2018

By KATE BARKMAN, Clerk
Dep. Clerk

**MOTION**

I Orlando-antonio am requesting the court to
Grant me a default against the defendants
They did not response to the affidavit that was
Submitted on april 17, 2018 to the court
They had 14 day to response the 14 day was
the 30 of april I am requesting that the
Clerk enters the default on the
docket, Proof of service was given
On april 17, 2018 over the ecf Court System

chief Judge
CC. Lawrence Stence
CC. Joel H Slomsky - Judge

Notary [signature]

DATE: 5/3/18

X [signature]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNETTE KENNEDY, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 22, 2019

*Affidavit of truth*

Case numBer 2 17-CV0146Z

Intentional inflection of emotional distress done by the Democratic Party and there agents in the general election in 2016 and in the special election March on 21 2017 it was a blatant abuse of power by the Democratic Party and their agents there was no accountability for following election laws on that day there was a blatant abuse of power going on that day

Harrisburg also caused emotional stress indirectly By having a press conference calling for the State Attorney General to do an investigation into the special election and then still swearing-in then candidate Emilio Vasquez as the state representative of the 197 District even after they had video of the misconduct that was going on the day of the special election by the agents working for the Democratic Party

This abuse of power did not just start with the special election it started for me back in 2016 when I ran for state representative of the 197 District as a write-in candidate against then incumbent state representative Leslie Acosta she was convicted a money laundering and embezzlement and the Democratic party still endorsed her candidacy she should never have been on the ballot from the beginning the election was stolen from me after I challenged her and the state courts stated they did not have jurisdiction to rule on the case I found out later that was untrue if the state courts had done it's job it would have never been a special election in the first place.

The emotional toll this has took on me and my family has been very very stressful

Right after the general election in 2016 I was feeling very depressed I was feeling like something I work so hard for was taken from me and I thought by going to court I was really going to receive Justice but that did not happen I felt less of a man because being disabled. Society looks at you differently. And this was just another slap in the face. I also was not able to provide for my children and my wife the way I would have liked to and I wanted to serve my community in a stronger capacity even though I am a 11 year advocate in this city of Philadelphia I do not let my disability stop me in any way I persevere everyday and I strive to make my community and my city better me and my wife we're going through some rough patches after I did not win and the general election and the special election after the blatant discrimination of the Democratic Party doing the general election in 2016 If the Democratic Party would not have discriminated against me I would not have lost my annual total salary in 2016 in the tune of $260,000 and that includes benefits as well in 2016 I was the only candidate that challenged Leslie Acosta in State Court if the Democratic Party would have done there job there would have never been a special election to speak of in 2017 because of Leslie Acosta was never supposed to be on the ballot because of her Federal conviction and I was deprived the opportunity to provide for my family a strong economic way of growth within our family and I was discriminated against by the party because I strongly believe I was discriminated against by the party because of my disability and they wanted to take advantage of me because of my disability and I'm seeking 10 million in damages intentional emotional distress and the Democratic Party has a monopoly stronghold on Philadelphia politics and this has been going on for over 64 years.

4/17/18

*[signature]*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNETTE KENNEDY, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 22, 2019

Please answer to this affidivit in 10 days

by Orlando-antonio-acos

# Marbury v. Madison, 5 U.S. 137 (1803)

Annotate this Case

Opinion

Annotation

Syllabus | Case

# U.S. Supreme Court

## Marbury v. Madison, 5 U.S. 1 Cranch 137 137 (1803)

**Marbury v. Madison**

**5 U.S. (1 Cranch) 137**

*Syllabus*

The clerks of the Department of State of the United States may be called upon to give evidence of transactions in the Department which are not of a confidential character.

The Secretary of State cannot be called upon as a witness to state transactions of a confidential nature which may have occurred in his Department. But he may be called upon to give testimony of circumstances which were not of that character.

Clerks in the Department of State were directed to be sworn, subject to objections to questions upon confidential matters.

Some point of time must be taken when the power of the Executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And the power has been exercised when the last act required from the person possessing the power has been performed. This last act is the signature of the commission.

If the act of livery be necessary to give validity to the commission of an officer, it has been delivered when executed, and given to the Secretary of State for the purpose of being sealed, recorded, and transmitted to the party.

In cases of commissions to public officers, the law orders the Secretary of State to record them. When, therefore, they are signed and sealed, the order for their being recorded is given, and, whether inserted inserted into the book or not, they are recorded.

When the heads of the departments of the Government are the political or confidential officers of the Executive, merely to execute the will of the President, or rather to act in

cases in which the Executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy.

The President of the United States, by signing the commission, appointed Mr. Marbury a justice of the peace for the County of Washington, in the District of Columbia, and the seal of the United States, affixed thereto by the Secretary of State, is conclusive testimony of the verity of the signature, and of the completion of the appointment; and the appointment conferred on him a legal right to the office for the space of five years. Having this legal right to the office, he has a consequent right to the commission, a refusal to deliver which is a plain violation of that right for which the laws of the country afford him a remedy.

To render a mandamus a proper remedy, the officer to whom it is directed must be one to whom, on legal principles, such writ must be directed, and the person applying for it must be without any other specific remedy.

Where a commission to a public officer has been made out, signed, and sealed, and is withheld from the person entitled to it, an action of detinue for the commission against the Secretary of State who refuses to deliver it is not the proper remedy, as the judgment in detinue is for the thing itself, or its value. The value of a public office, not to be sold, is incapable of being ascertained. It is a plain case for a mandamus, either to deliver the commission or a copy of it from the record.

To enable the Court to issue a mandamus to compel the delivery of the commission of a public office by the Secretary of State, it must be shown that it is an exercise of appellate jurisdiction, or that it be necessary to enable them to exercise appellate jurisdiction.

It is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create the cause.

The authority given to the Supreme Court by the act establishing the judicial system of the United States to issue writs of mandamus to public officers appears not to be warranted by the Constitution.

It is emphatically the duty of the Judicial Department to say what the law is. Those who apply the rule to particular cases must, of necessity, expound and interpret the rule. If two laws conflict with each other, the Court must decide on the operation of each.

If courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply.

At the December Term, 1801, William Marbury, Dennis Ramsay, Robert Townsend Hooe, and William Harper, by their counsel,

Page 5 U. S. 138

severally moved the court for a rule to James Madison, Secretary of State of the United States, to show cause why a mandamus should not issue commanding him to cause to be delivered to them respectively their several commissions as justices of the peace in the District of Columbia. This motion was supported by affidavits of the following facts: that notice of this motion had been given to Mr. Madison; that Mr. Adams, the late President of the United States, nominated the applicants to the Senate for their advice and consent to be appointed justices of the peace of the District of Columbia; that the Senate advised and consented to the appointments; that commissions in due form were signed by the said President appointing them justices, &c., and that the seal of the United States was in due form affixed to the said commissions by the Secretary of State; that the applicants have requested Mr. Madison to deliver them their said commissions, who has not complied with that request; and that their said commissions are withheld from them; that the applicants have made application to Mr. Madison as Secretary of State of the United States at his office, for information whether the commissions were signed and sealed as aforesaid; that explicit and satisfactory information has not been given in answer to that inquiry, either by the Secretary of State or any officer in the Department of State; that application has been made to the secretary of the Senate for a certificate of the nomination of the applicants, and of the advice and consent of the Senate, who has declined giving such a certificate; whereupon a rule was made to show cause on the fourth day of this term. This rule having been duly served,

Page 5 U. S. 139

Mr. Jacob Wagner and Mr. Daniel Brent, who had been summoned to attend the court and were required to give evidence, objected to be sworn, alleging that they were clerks in the Department of State, and not bound to disclose any facts relating to the business or transactions of the office.

The court ordered the witnesses to be sworn, and their answers taken in writing, but informed them that, when the questions were asked, they might state their objections to answering each particular question, if they had any.

Mr. Lincoln, who had been the acting Secretary of State, when the circumstances stated in the affidavits occurred, was called upon to give testimony. He objected to answering. The questions were put in writing.

The court said there was nothing confidential required to be disclosed. If there had been, he was not obliged to answer it, and if he thought anything was communicated to him confidentially, he was not bound to disclose, nor was he obliged to state anything which would criminate himself.

The questions argued by the counsel for the relators were, 1. Whether the Supreme Court can award the writ of mandamus in any case. 2. Whether it will lie to a Secretary of State, in any case whatever. 3. Whether, in the present case, the Court may award a mandamus to James Madison, Secretary of State.

Page 5 U. S. 153

**Disclaimer:** Official Supreme Court case law is only found in the print version of the United States Reports. Justia case law is provided for general informational purposes only, and may not reflect current legal developments, verdicts or settlements. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or information linked to from this site. Please check official sources.

# Marbury v. Madison,
# 5 U.S. 137 (1803)

**Annotate this Case**

Opinion                        Annotation                        Syllabus | Case

## Primary Holding
Congress does not have the power to pass laws that override the Constitution, such as by expanding the scope of the Supreme Court's original jurisdiction.

## Facts
Thomas Jefferson defeated John Adams in the presidential election of 1800, which was decided on February 17, 1801. Before Jefferson took office on March 4, Adams and Congress passed the Judiciary Act of 1801, which created new district courts, expanded the number of circuit courts, added more judges to each circuit, gave the President more control over appointing federal judges, and reduced the number of Supreme Court Justices from six to five. This law essentially was an attempt by Adams and his political party to frustrate the incoming opposition, since he used his new power to appoint 16 new circuit judges and 42 new justices of the peace, a group known as the "Midnight Judges." The incoming appointees were approved by the Adams Senate, but their appointments were not valid until each of their commissions was delivered by John Marshall in his capacity as acting Secretary of State.

Justices of the peace were entitled to serve a term of five years. One of the new appointees was William Marbury, a long-standing supporter of Adams who received the position of justice of the peace in the District of Columbia. As was the case with a handful of other new appointees, Marshall failed to deliver Marbury's commission before Adams left office and was succeeded by Jefferson. With the change in administration, Marshall also left his position as Secretary of State and was succeeded by James Madison. However, Jefferson ordered acting Secretary of State Levi Lincoln to cease delivering the commissions, thus preventing the new appointees from taking their positions. He assumed that they could be considered void, since they were not delivered on time.

The machinations did not end there, moreover. The Jefferson Congress proceeded to replace the Judiciary Act of 1801 with a new Judiciary Act of 1802 that essentially restored the initial Judiciary Act of 1789. It also sought to delay the Supreme Court in hearing the inevitable challenge to the constitutionality of Jefferson's maneuver by canceling its term in June 1802. Marbury then filed a writ of mandamus with the Supreme Court, asking it to order the executive branch to deliver his commission.

# Opinions

## Majority
- John Marshall (Author)
- William Paterson
- Samuel Chase
- Bushrod Washington

This was a rare case that arrived at the Supreme Court as the court of original jurisdiction rather than as an appeal from a lower court. Marshall and the other Justices needed to determine not only whether Marbury had a right to his commission but whether he had a remedy that could be enforced through the courts. Marshall found that a remedy could be implied because no right could exist without a remedy. Also, delivering the commission was a purely ministerial function of the executive branch. By ordering it to comply with its ministerial duties, the Court would not violate the separation of powers by encroaching on another branch's discretion.

Marshall also ruled that a writ of mandamus was the proper way to seek a remedy but grappled with the question of whether the Supreme Court could issue it. He identified a conflict between the Judiciary Act of 1789 and the Constitution, each of which provided different parameters for the Court's original jurisdiction. Marshall rejected Marbury's argument that the Constitution merely served as a foundation on which Congress could build with later laws, finding that the Constitution trumped any laws and that Congress did not have the power to modify the Constitution through regular legislation. In explaining why the Constitution was supreme to all laws, he noted that the Supremacy Clause places the Constitution before the laws and that judges must take an oath to uphold the Constitution

As a result, Marshall found that the section of the Judiciary Act of 1789 that purported to give the Supreme Court original jurisdiction over these matters was invalid because it violated the Constitution.

[The Supreme Court consisted of only six Justices at this time, so Marshall's four-Justice opinion was unanimous because two of the Justices recused themselves.]

## Recused
- William Cushing (Author)
- Alfred Moore

# Case Commentary
The Supreme Court uses its own understanding of the Constitution in reviewing the legitimacy of acts by other branches of the government, even though this power is not apparent from the plain text of the document. This case established the legitimacy of judicial review as well as the primacy of the Constitution over any other source of law. Many legal scholars of both Marshall's period and the contemporary era found the opinion's logic strained, basing a sweeping conclusion on relatively little textual support. Still, the concept of judicial review has long been accepted without challenge.

Unfortunately for Marbury, he never received his appointment as a justice of the

Cornell Law School

Federal Rules of Civil Procedure › TITLE VII. JUDGMENT › Rule 55. Default; Default Judgment

# Rule 55. Default; Default Judgment

(a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) ENTERING A DEFAULT JUDGMENT.

    (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

    (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

        (A) conduct an accounting;

        (B) determine the amount of damages;

        (C) establish the truth of any allegation by evidence; or

        (D) investigate any other matter.

(c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

(d) JUDGMENT AGAINST THE UNITED STATES. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

## NOTES

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 29, 2015, eff. Dec. 1, 2015.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1937

    This represents the joining of the equity decree *pro confesso* ([former] Equity Rules 12 (Issue of Subpoena—Time for Answer), 16 (Defendant to Answer—Default—Decree *Pro Confesso*), 17 (Decree *Pro Confesso* to be Followed by Final Decree—Setting Aside Default), 29

(Defenses—How Presented), 31 (Reply—When Required—When Cause at Issue)) and the judgment by default now governed by U.S.C., Title 28, [former] §724 (Conformity act). For dismissal of an action for failure to comply with these rules or any order of the court, see rule 41(b).

*Note to Subdivision (a).* The provision for the entry of default comes from the Massachusetts practice, 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §57. For affidavit of default, see 2 Minn.Stat. (Mason, 1927) §9256.

*Note to Subdivision (b).* The provision in paragraph (1) for the entry of judgment by the clerk when plaintiff claims a sum certain is found in the N.Y.C.P.A. (1937) §485, in Calif.Code Civ.Proc. (Deering, 1937) §585(1), and in Conn.Practice Book (1934) §47. For provisions similar to paragraph (2), compare Calif.Code, *supra*, §585(2); N.Y.C.P.A. (1937) §490; 2 Minn.Stat. (Mason, 1927) §9256(3); 2 Wash.Rev.Stat.Ann. (Remington, 1932) §411(2). U.S.C., Title 28, §785 (Action to recover forfeiture in bond) and similar statutes are preserved by the last clause of paragraph (2).

*Note to Subdivision (e).* This restates substantially the last clause of U.S.C., Title 28, [former] §763 (Action against the United States under the Tucker Act). As this rule governs in all actions against the United States, U.S.C., Title 28, [former] §45 (Practice and procedure in certain cases under the interstate commerce laws) and similar statutes are modified insofar as they contain anything inconsistent therewith.

### NOTES OF ADVISORY COMMITTEE ON RULES—1946 SUPPLEMENTARY NOTE

*Note.* The operation of Rule 55(b) (Judgment) is directly affected by the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. [App.] §501 *et seq.*). Section 200 of the Act [50 U.S.C. Appendix, §520] imposes specific requirements which must be fulfilled before a default judgment can be entered (*e.g., Ledwith v. Storkan* (D.Neb. 1942) 6 Fed.Rules Serv. 60b.24, Case 2, 2 F.R.D. 539, and also provides for the vacation of a judgment in certain circumstances. See discussion in Commentary, *Effect of Conscription Legislation on the Federal Rules* (1940) 3 Fed.Rules Serv. 725; 3 *Moore's Federal Practice* (1938) Cum.Supplement §55.02.

### NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

The amendments are technical. No substantive change is intended.

### COMMITTEE NOTES ON RULES—2007 AMENDMENT

The language of Rule 55 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 55(a) directed the clerk to enter a default when a party failed to plead or otherwise defend "as provided by these rules." The implication from the reference to defending "as provided by these rules" seemed to be that the clerk should enter a default even if a party did something showing an intent to defend, but that act was not specifically described by the rules. Courts in fact have rejected that implication. Acts that show an intent to defend have frequently prevented a default even though not connected to any particular rule. "[A]s provided by these rules" is deleted to reflect Rule 55(a)'s actual meaning.

##Added for new adsense auto ads

| Search All of USLegal, Inc | Search |

USLegal Home (https://uslegal.com/)     Admiralty (https://admiralty.uslegal.com)
"Saving-to-Suitors" Clause

# "Saving-To-Suitors" Clause

Article III, Section 2 of the U.S. constitution grants original jurisdiction over maritime cases to federal courts. All admiralty actions in rem come under federal admiralty jurisdiction.[i] Federal admiralty jurisdiction does not provide the right to jury trial regarding actions in rem.

Federal law introduced a saving to suitors clause in order to allow a party to pursue a remedy in a state court for a maritime claim when entitled to such remedy. The saving-to suitors clause provides jurisdiction to state courts in cases such as minor personal injury, cargo damage, or property claims, that could be resolved by common-law.[ii] Federal and state courts have concurrent jurisdiction in most admiralty cases. However, admiralty actions in personam can be initiated only in state courts.

The saving to suitors clause provides common law remedy to claimants with a right to jury trial in maritime issues. Therefore, the clause extends only to common law remedies. The clause does not extend to substantive law.

State courts have concurrent jurisdiction in all admiralty cases except for actions in rem. The saving to suitors clause authorizes state courts to apply state laws in admiralty cases. However, state courts cannot make substantial changes in general admiralty law.[iii]

Although substantive state law application is not promoted in admiralty cases, state courts can use state procedural laws in regulating admiralty cases. When a party files a suit in a state court in an action in personam in a maritime dispute, the party is bound by the procedural rules of the state. State courts provide claimants the right to jury trial in admiralty actions.[iv]

Generally, an admiralty claim filed before a state court in an admiralty matter cannot be shifted to a federal court. However, such a transfer is permissible when it does not cause any prejudicial effect on a claimant.[v] The claimant's right to choose a forum and right to jury trial provided by the saving to suitors clause will not be affected by such a transfer.

An admiralty case before a state court can be shifted to a federal court only after considering citizenship and residence of a claimant.[vi]However, when a federal court lacks jurisdiction in a maritime dispute, the case cannot be shifted from a state court to federal court.[vii] When diversity jurisdiction is not applicable also, federal courts cannot remove a case from state courts in an admiralty case.[viii]

[i] *Canino v. Londres*, 862 F. Supp. 685 (D.N.H. 1994)

[ii] *Stainless Steel & Metal Mfg. Corp. v. Sacal V. I., Inc.*, 452 F. Supp. 1073 (D.P.R. 1978)

Amended Rule 55 omits former Rule 55(d), which included two provisions. The first recognized that Rule 55 applies to described claimants. The list was incomplete and unnecessary. Rule 55(a) applies Rule 55 to any party against whom a judgment for affirmative relief is requested. The second provision was a redundant reminder that Rule 54(c) limits the relief available by default judgment.

### COMMITTEE NOTES ON RULES—2009 AMENDMENT

The time set in the former rule at 3 days has been revised to 7 days. See the Note to Rule 6.

### COMMITTEE NOTES ON RULES—2015 AMENDMENT

Rule 55(c) is amended to make plain the interplay between Rules 54(b), 55(c), and 60(b). A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b). Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time. The demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment.

# Taxonomy upgrade extras

civil procedure

| ‹ Rule 54. Judgment; Costs | up | Rule 56. Summary Judgment › |
|---|---|---|

**1   Free Online Legal Forms**
Print or Download Your Customized Legal Document in 5-10 Minutes for Free. lawdepot.com    ❯

**2   Download Application Form**
Free printable application forms. Download formfinderfree app now. formfinderfree.com    ❯

About LII

Contact us

Advertise here

Help

Terms of use

Privacy

$$\left[ \text{LII} \right]$$