IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO A. ACOSTA, et al., | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 17-1462 |
| DEMOCRATIC CITY COMMITTEE, et al., | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                                                  **August 30, 2018**

## I.      INTRODUCTION

This action originally arose from two related lawsuits, <u>Acosta et al. v. Democratic City Committee et al.</u>, Civil Action No. 17-1462, and <u>Little et al. v. Vasquez et al.</u>, Civil Action No. 17-1562, which were consolidated by Order of this Court.  (Doc. No. 53.)    The lawsuits, filed pursuant to 42 U.S.C. § 1983,[1] generally alleged that numerous instances of coercion, intimidation, and misconduct occurred during a special election held on March 21, 2017 for Pennsylvania State Representative for the 197th Legislative District in Philadelphia, which caused the election to be held in an unfair manner and in violation of the First and Fourteenth Amendments to the United States Constitution.

In the original two related lawsuits, Plaintiffs were defeated write-in candidates Orlando A. Acosta and Edward Lloyd, proceeding pro se, defeated Republican candidate Lucinda Little,

---

[1]    42 U.S.C. § 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

defeated write-in Green Party candidate Cheri Honkala, the Republican City Committee of Philadelphia, and the Republican Party of Pennsylvania.  The Defendants were state and local government officials and entities, and partisan officials and entities Plaintiffs claim were involved in the execution of the election.

By Opinion and Order dated January 22, 2018, this Court dismissed Plaintiffs' Complaints in their entirety for failure to state a claim, but granted them leave to file amended Complaints.  (Doc. Nos. 83, 84.)  On February 12, 2018, Plaintiff Acosta filed a Third Amended Complaint (Doc. No. 91), which was joined by Plaintiff Lloyd (Doc. No. 103).  Plaintiffs Little, Honkala, the Republican City Committee of Philadelphia, and the Republican Party of Pennsylvania did not file an amended Complaint.

Before the Court are Defendants' Motions to Dismiss the Third Amended Complaint (Doc. No. 91)[2] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] (Doc. Nos. 105-110.)  In response, Plaintiff Acosta has filed various documents, including a Motion for Default against Defendants for failing to respond to an Affidavit of Truth he filed

---

[2]   Although Plaintiff Acosta labeled Document Number 91 as his Second Amended Complaint, his Complaint (Doc. No. 5) was amended twice before (Doc. Nos. 9, 11), rendering the instant Complaint the Third Amended Complaint (Doc. No. 91).

[3]   The complete list of Defendants named in the Third Amended Complaint is as follows: the Philadelphia City Democratic Committee; Emilio Vazquez; Ward Leaders Carlos Matos, Elaine Tomlin, Jewell Williams, Dwayne Lilley, Shirley Gregory, and El-Amor Brown Ali; Mike Turzai, Speaker of the House; Pedro A. Cortés, former Secretary of the Commonwealth of Pennsylvania; Philadelphia City Commissioners Anthony Clark, Lisa Deeley, and Al Schmidt; the Return Board; the City Commissioners' Office; the Committee of Seventy; and Leslie Acosta, former Pennsylvania State Representative.

On October 11, 2017, Cortés resigned from his position as Secretary of the Commonwealth of Pennsylvania.  That same day, Robert Torres was designated to serve as Acting Secretary of the Commonwealth.  Torres is automatically substituted as a party for Secretary Cortés. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").

(Doc. No. 114) and a Motion for Default Judgment against Defendant Leslie Acosta (Doc. No. 123).  For reasons that follow, Defendants' Motions to Dismiss (Doc. Nos. 105-110) will be granted, and Plaintiff Acosta's Motions for Default and Default Judgment (Doc. Nos. 114, 123) will be denied.

## II.     BACKGROUND

### A.     Facts Alleged in the Second Amended Complaint

The facts of this case were set forth at length in the Court's January 23, 2018 Opinion, Acosta v. Democratic City Committee, 288 F. Supp. 3d 597 (E.D. Pa. 2018), granting Defendants' first Motions to Dismiss.  (Doc. No. 83.)  The Court will not restate all of the facts here but will provide a brief summary of them.  Plaintiffs Acosta and Lloyd brought the Second Amended Complaint against the Philadelphia City Democratic Committee ("Democratic Committee"); Emilio Vazquez; Ward Leaders Carlos Matos, Elaine Tomlin, Jewell Williams, Dwayne Lilley, Shirley Gregory, and El-Amor Browne Ali ("Six Ward Leaders"); Pennsylvania Speaker of the House of Representatives Mike Turzai; former Secretary of the Commonwealth of Pennsylvania Pedro Cortés ("former Secretary Cortés"); the Department of State, Bureau of Commissions, Elections and Legislation ("Pennsylvania Department of State"); Philadelphia City Commissioners Anthony Clark, Lisa Deeley, and Al Schmidt ("individual City Commissioners"); the Philadelphia City Commissioners' Office and the Philadelphia County Board of Elections (collectively, "City Commissioners' Office"); former State Representative Leslie Acosta; and the Committee of Seventy.

The Second Amended Complaint alleged that on March 21, 2017, a special election was held for the Pennsylvania State Representative seat for the 197th Legislative District in Philadelphia.  Former Secretary Cortés ordered the election because the previously-elected State Representative, Leslie Acosta, was not seated due to a prior felony conviction.  Although several

3

write-in candidates ran in the election, Republican Lucinda Little was the only duly nominated candidate.  Write-in candidate Emilio Vazquez was the eventual winner of the election and was purportedly sponsored and supported by the Democratic Committee.  Plaintiffs Acosta and Lloyd also were write-in candidates.

Plaintiffs alleged that during the special election, individuals at the polls engaged in voter coercion, intimidation, and other misconduct.  The Court explained that these individuals could be divided into three categories: (a) government actors, (b) Democratic Party actors, and (c) unidentified actors.  (Doc. No. 83 at 12.)  As to government actors, Plaintiffs alleged that Election Board workers told voters to vote for Vazquez, threatened and intimidated voters if it appeared they were going to vote for a candidate other than Vazquez, and allowed Democratic workers to hand out literature and enter voting booths to help constituents vote for Vazquez. Plaintiffs alleged that voters were turned away if they attempted to vote for a candidate other than Vazquez.  They also alleged that Election Board workers impermissibly interacted with individuals from the Democratic Party and that Vazquez impermissibly interacted with the Election Board and voters.

Plaintiffs asserted that persons affiliated with the Democratic Party, including Ward Leaders and Democratic Committee people, improperly disseminated literature, materials, and information.  As voters checked in to vote, Democratic Committee people told them to vote for Vazquez, and Democratic Party affiliates were seen going in and out of polling locations and entering voting booths with voters.  Democratic workers threatened, intimidated, and coerced voters if it appeared they were going to vote for a candidate other than Vazquez.

Plaintiffs also alleged misconduct on the part of certain individuals but did not plead facts revealing their identities.  The alleged misconduct included impermissible dissemination of literature and information, improper assistance of voters, and voter intimidation and harassment.

Finally, Plaintiffs alleged that voting materials and equipment were tampered with, that voting machines malfunctioned, and that improper chain of custody procedures were followed regarding voting materials and equipment.  Plaintiffs asserted that the Board of Elections, the Philadelphia City Commissioners, the Ward Leaders, the Committee of Seventy, and Speaker Turzai caused these problems.  They alleged this conduct violated their rights under the First and Fourteenth Amendments, including their rights of association, to vote, and to speech, as well as their Fourteenth Amendment fundamental due process right.  Plaintiffs also asserted the alleged conduct violated the Pennsylvania Election Code.  They sought declaratory and injunctive relief.

### B.        Dismissal of the Second Amended Complaint

In dismissing the Second Amended Complaint, the Court held that Plaintiffs had failed to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As to the Pennsylvania Department of State, the Court held that the Eleventh Amendment barred suit and dismissed all claims against it with prejudice because the Court did not have jurisdiction over them.  (Doc. No. 83 at 34.)

Next, the Court held that Emilio Vazquez, the Democratic Committee, and the Six Ward Leaders were not state actors and therefore could not be subject to liability under 42 U.S.C. § 1983.  (Id. at 36.)  As a political candidate during the special election, Vazquez was a private actor and thus did not fall within the scope of § 1983.  (Id. at 49.)  Plaintiffs also had failed to plausibly allege that Vazquez had engaged in joint action or conspired with a state actor to expose him to liability under § 1983.  (Id.)  The Democratic Committee, as a political party, also was not a state actor and could not be held liable under § 1983.  (Id. at 41.)  The Six Ward

Leaders also were private actors, and Plaintiffs had not plausibly alleged that they had engaged in a conspiracy with a state actor such that they could be held liable under § 1983.  (Id. at 45-46.)

As to Speaker Turzai, former Secretary Cortés, and the individual City Commissioners, the Court held that Plaintiffs had failed to plausibly allege that they had any personal involvement in the wrongful conduct.  (Id. at 50.)  The Court also dismissed any claims against the City Commissioners in their official capacity because they were duplicative of claims against the City Commissioners' Office.  (Id. at 55 n.27.)

As to the City Commissioners' Office, the Court held that the claims against it would be dismissed because Plaintiffs had not plausibly pled a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), for a policy or custom of failure to train or supervise.  (Doc. No. 83 at 57.)   Instead, Plaintiffs merely had pled the conclusory allegation that the City Commissioners' Office failed to supervise the election.  (Id. at 59.)

After dismissing the First and Fourteenth Amendment claims, the Court held that to the extent Plaintiffs pled claims for violations of the Pennsylvania Election Code, it would decline to exercise supplemental jurisdiction over them since it had dismissed the underlying constitutional claims over which it had original jurisdiction.  (Id. at 73.)  Accordingly, the Court dismissed any Pennsylvania Election Code claims without prejudice.  (Id.)

As to Leslie Acosta and the Committee of Seventy, although those parties had not filed Motions to Dismiss, the Court sua sponte dismissed the claims against them without prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).[4]  (Doc. No. 83 at 75.)  The Court also noted that process had not been served on the Committee of Seventy.  (Id.)

---

[4]   For actions filed by plaintiffs proceeding in forma pauperis, § 1915(e)(2)(B)(ii) provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."  § 1915(e)(2)(B)(ii).  The standard

Finally, the Court granted Plaintiffs leave to amend the Complaints against all Defendants except for the Pennsylvania Department of State, since the claims against it were barred by the Eleventh Amendment.  (Id. at 77, 79.)  The Court explained:

> Plaintiffs' § 1983 claims were dismissed because they failed to plead facts sufficient to establish that a conspiracy existed between the political party actors and the state actors, or that the conduct that allegedly occurred at the special election could be attributed to the state actors.  Plaintiffs will be given the opportunity to plead facts sufficient to support its § 1983 claims that overcome the deficiencies discussed in this Opinion.

(Id. at 78 (footnotes omitted).)  The Court cautioned that Plaintiffs "must allege sufficient facts in any amended complaint and not merely repeat what is contained in the dismissed complaints." (Id. at 79 n.35.)  The Court warned that repeating the same allegations would result in another dismissal.  (Id.)

### C.    Facts Alleged in the Third Amended Complaint

On February 12, 2018, Plaintiff Acosta filed a Third Amended Complaint (Doc. No. 91), which Plaintiff Lloyd joined (Doc. No. 103).  Plaintiffs named as Defendants the Democratic Committee; Emilio Vazquez; the Six Ward Leaders; Speaker Turzai; former Secretary Cortés; the individual City Commissioners; the City Commissioners' Office; the Return Board;[5] Leslie Acosta; and the Committee of Seventy.  (Doc. No. 91 at 8.)

---

for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as the standard under Federal Rule of Civil Procedure 12(b)(6).  Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

[5]   Plaintiffs include the Return Board as a Defendant with no explanation of the identity of this Defendant or its role in the special election.  Under the Pennsylvania Election Code, however, it appears that the Return Board is part of each county's board of elections, which in this case is the Philadelphia County Board of Elections.  The Pennsylvania Election Code, 25 Pa. Stat. § 3153, provides in pertinent part:

> The county board of elections shall arrange for the computation and canvassing of the returns of votes cast at each primary and election at its office or at some other convenient public place at the county seat . . . .

Plaintiffs allege the following facts in their Third Amended Complaint.  Plaintiffs assert as background that in 2016, the Democratic Party endorsed Leslie Acosta as the incumbent candidate but that she had pled guilty to money laundering and embezzlement.  (Id. at 1.) Plaintiff Acosta contends that he ran as a write-in candidate against Leslie Acosta in 2016 and that the Democratic Party stole the election from him.  (Id.)  He states that thereafter he took the matter to the Commonwealth Court of Pennsylvania and that the Honorable James Garner Colins rendered a decision denying him the Democratic seat of State Representative.  (Id.)  Plaintiff Acosta alleges that he and his family were affected emotionally and financially.  (Id.)

On March 21, 2017, he ran again as a write-in candidate in the special election for the 197th District.  (Id.)  Plaintiffs allege that the 197th District Democratic Party had meetings with Ward Leaders and Committee people to plan and organize their strategy to fraudulently steal the 197th District special election and that former State Representative Leslie Acosta had endorsed a candidate, Freddy Ramirez, to be her successor.  (Id.)

Plaintiffs allege that Ramirez was the candidate nominated to run on behalf of the Democratic Party, but he was challenged by Republican candidate Lucinda Little on his residency within the 197th District.  (Id. at 2.)  They state that it was later revealed Ramirez did not reside in the 197th District and that he was removed from the ballot before the special election.  (Id.)  As a result, Plaintiffs allege that the Democratic Party put up another candidate, Emilio Vazquez.  (Id.)  Plaintiffs assert that the Democratic Party and Vazquez put out posters before the special election stating that Vazquez was the only Democratic candidate on the ballot. (Id.)  Plaintiffs allege that this statement was not true because only one candidate was on the ballot, Republican Lucinda Little, and that all other candidates were write-in candidates.  (Id.)

§ 3153(a).  The Court will treat the Return Board as part of the Philadelphia County Board of Elections, which, as before, it will address collectively with the City Commissioners' Office.

They then allege that Vazquez committed perjury and wire fraud under the RICO statute[6] and state law.  (Id.)

Plaintiffs then allege that the day after the election, the state legislative branch in Harrisburg and the leadership team held a news conference at which they called on State Attorney General Josh Shapiro to launch an investigation into the election.  (Id.)  Plaintiffs state that the legislative branch in Harrisburg had a duty not to certify the results of the special election until after the investigation had been completed.  (Id.)  Plaintiffs also note that four people were charged with fraud related to the election: Dolores Shaw, Calvin Maddox, Thurman George, and Wallace Hill.  (Id.)  But Plaintiffs do not explain what role these people played in the election and do not name them as Defendants in the Third Amended Complaint.  (Id.)

Plaintiffs also allege that administrators of the Return Board instructed state agents and employees of the Bureau of Elections and Legislation to commit illegal and fraudulent activity on the state payroll after the special election occurred.  (Id. at 3.)  Plaintiffs allege that the Return Board is the main state entity that oversees election results, including counting of votes.  (Id.)

Plaintiffs further assert that at the September 14, 2017 hearing on the first Motions to Dismiss, held before this Court, counsel for Emilio Vazquez, committed perjury by making the legal argument that federal courts should not be involved in state elections.  (Id. at 3.)  They also contend that counsel committed perjury by making this legal argument in his Supplemental Memorandum in support of his Motion to Dismiss.  (Id.)

Regarding the Committee of Seventy, Plaintiffs allege that as a nonprofit entity, it is supposed to oversee elections and ensure that everything is run properly and fairly.  (Id. at 4.) Plaintiffs allege that during the special election, the Committee of Seventy was "nowhere to be

---

[6]  By referring to "the RICO statute," the Court assumes Plaintiffs are referencing Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

found when it came to overseeing and making sure the integrity of the . . . special election was ran honestly and fairly for all the people of Philadelphia." (Id.)

As to the Democratic Committee, Plaintiffs allege that then chairman Bob Brady was at a meeting conducted by former State Representative Leslie Acosta along with several Ward Leaders and Committee members. (Id.) Plaintiffs contend that at the meeting, they discussed endorsing candidates for the special election. (Id.) Plaintiffs allege that at this and other meetings, the illegal activity that took place at the special election was planned. (Id.) Plaintiff Acosta seeks $10 million for the damages done to himself and his family by the Democratic Committee and the Democratic Party.[7] (Id. at 4.)

---

[7] Plaintiffs attach to the Third Amended Complaint the text of various federal and state statutes, including 28 U.S.C. § 144, bias or prejudice of a judge; 18 U.S.C. § 4, misprision of a felony; 42 Pa. Cons. Stat. § 2522, oath of office of an attorney; the Ralph M. Brown Act, Cal. Gov't Code § 54950, a California state law concerning local legislative bodies; 18 U.S.C. § 1621, the federal perjury statute; 18 U.S.C. § 1964, the civil RICO statute; and 25 Pa. Stat. § 3551, addressing penalties for a candidate violating the Pennsylvania Election Code. (Doc. No. 91 at 9-14, 16, 28-29.) In addition, Plaintiffs have attached a U.S. Attorney's Office Citizens Report Form filled out by Plaintiff Acosta. (Id. at 15.)

Plaintiffs also attach the opinion of the Honorable Sheila Woods-Skipper of the Court of Common Pleas of Philadelphia County, dismissing Plaintiff Acosta's petition challenging the 2016 election for State Representative. (Id. at 34-35.) Plaintiffs also attach the appeal of that decision to the Commonwealth Court of Pennsylvania on November 28, 2016. (Id. at 17.) In it, Plaintiff Acosta seeks review on the issue of whether Leslie Acosta's victory in the 2016 election was illegal due to her felony conviction, resulting in Plaintiff Acosta being declared the winner. (Id. at 20.) Plaintiffs also attach the January 24, 2017 order of the Honorable James Gardner Colins of the Commonwealth Court of Pennsylvania, affirming the dismissal of Plaintiff Acosta's petition and the order denying Plaintiff Acosta's application for reconsideration of the January 24, 2017 order. (Id. at 25-27.)

Finally, Plaintiffs attach two news articles. The first, dated December 7, 2016, is titled, "Convicted Rep. Leslie Acosta weighs in on . . . her own replacement." (Id. at 30-32 (omission in original).) The second, dated December 28, 2016, is titled, "Ward leaders in backroom battle over replacement for convicted State Rep. Leslie Acosta." (Id. at 25-38.)

### D.     Procedural History

On March 31, 2017, Plaintiffs Acosta and Lloyd initiated this action by filing an Emergency Petition for an injunction staying the certification of Vazquez as the election winner. (Doc. No. 1-3.)   By Order of the Honorable Paul S. Diamond of this Court, the Emergency Petition was denied.   (Doc. No. 4.)   Plaintiffs Acosta and Lloyd then filed a Complaint.   (Doc. No. 5.)   Thereafter, they filed an Amended Complaint (Doc. No. 9) and then a Second Amended Complaint.   (Doc. No. 11.)   On April 6, 2017, Plaintiffs defeated Republican candidate Lucinda Little, defeated write-in Green Party candidate Cheri Honkala, the Republican City Committee of Philadelphia, and the Republican Party of Pennsylvania filed their Complaint (No. 17-1562, Doc. No. 1), and on April 7, 2017, they filed an Amended Complaint (Id., Doc. No. 2).

On August 10, 2017, the actions were consolidated by Order of this Court.   (Doc. No. 53.)   Defendants filed Motions to Dismiss, and on September 14, 2017, a hearing was held on the Motions.   As noted previously, by Opinion and Order dated January 23, 2018, the Court dismissed all claims but afforded Plaintiffs leave to amend the Complaints as to all Defendants except for the Pennsylvania Department of State.   (Doc. Nos. 83, 84.)   Plaintiffs Acosta and Lloyd filed a Third Amended Complaint.   (Doc. No. 91.)   The remaining Plaintiffs did not do so. Defendants again have filed Motions to Dismiss (Doc. Nos. 105-110), which are ripe for a decision.[8]

---

[8]    In rendering a decision, the Court has considered its January 23, 2018 Opinion and Order (Doc. Nos. 83, 84); the Third Amended Complaint (Doc. No. 91); the Democratic Committee's Motion to Dismiss (Doc. No. 105); Emilio Vazquez's Motion to Dismiss and Motion to Strike (Doc. No. 106); the Motion to Dismiss of Secretary Torres, substituted as a party for Secretary Cortés (Doc. No. 107); Secretary Turzai's Motion to Dismiss (Doc. No. 108); the Six Ward Leaders' Motion to Dismiss (Doc. No. 109); and the Motion to Dismiss of the individual City Commissioners, the City Commissioners' Office, and the Philadelphia Board of Elections (Doc. No. 110).

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally,

---

The Court also has considered Plaintiff Acosta's Affidavit of Status as Secured Party and Creditor (Doc. No. 111); a UCC-1 Form filed by Plaintiff Acosta (Doc. No. 112); Plaintiff Acosta's Affidavit of Truth (Doc. No. 113); Plaintiff Acosta's Motion for Default against Defendants (Doc. No. 114); the letter dated May 7, 2018 from Plaintiff Acosta (Doc. No. 115); Plaintiff Acosta's Affidavit in Support of Default (Doc. No. 116); Plaintiff Acosta's Statement regarding placing a bond in a court case (Doc. No. 117); Plaintiff Lloyd's Statement of Truth (Doc. No. 118); the letter dated June 4, 2018 from Plaintiff Acosta (Doc. No. 119); Plaintiff Acosta's Affidavit of Probable Cause (Doc. No. 120); the letter dated June 21, 2018 from Plaintiff Acosta (Doc. No. 121); the letter dated June 26, 2018 from Plaintiff Acosta (Doc. No. 122); Plaintiff Acosta's Motion for Default Judgment against Leslie Acosta (Doc. No. 123); and the Statement of Plaintiff Acosta (Doc. No. 124).

"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"  Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)).  It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief."  Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

**IV.   ANALYSIS**

Defendants move to dismiss the Third Amended Complaint, arguing that Plaintiffs have failed to cure the defects in their Second Amended Complaint.  (Doc. Nos. 105-110.)  The Court will address the Motions to Dismiss filed by each Defendant in turn.  Then, the Court will briefly address Plaintiff Acosta's Motions for Default and Default Judgment.  For reasons that follow, as noted, Defendants' Motions to Dismiss will be granted, and Plaintiff Acosta's Motions will be denied.

**A.   Claims Against the Democratic Committee, Emilio Vazquez, and the Six Ward Leaders Will Be Dismissed Because Plaintiffs Have Failed to Allege that They Conspired or Engaged in Joint Conduct With State Actors**

The Democratic Committee, Emilio Vazquez, and the Six Ward Leaders submit that since this Court already held that these parties are not state actors, Plaintiffs were required to plead that these parties participated in joint activity or in a conspiracy with a state actor to be held liable under § 1983.  (Doc. Nos. 105, 106-1, 109-1.)  They argue that Plaintiffs have failed to allege any new facts to support a claim of joint activity or conspiracy.  (Id.)  The Court agrees.

In its January 23, 2018 Opinion, this Court held that the Democratic Committee, Vazquez, and the Six Ward Leaders were not state actors and therefore could not be held liable under § 1983.  Instead, Plaintiffs would have to plausibly allege that these parties engaged in joint activity or a conspiracy with a state actor.  (Doc. No. 83 at 37-49, 78.)  In the Third Amended Complaint, Plaintiffs allege that the Democratic Party had meetings with Ward Leaders and Committee people and that the Democratic Party and Vazquez put out posters stating that Vazquez was the only Democratic candidate on the ballot.  (Doc. No. 91 at 1-2.)  But Plaintiffs fail to allege any facts to support a claim that these parties acted jointly or conspired

14

with a state actor.  For this reason, Plaintiffs have failed to plausibly allege that these Defendants violated § 1983, and the claims against them will be dismissed.[9]

### B.   Claims Against Speaker Turzai Will Be Dismissed Because Plaintiffs Have Not Plausibly Alleged that He Was Personally Involved in the Wrongdoing

As before, Speaker Turzai submits that Plaintiffs again have failed to allege any actionable conduct on his part and have failed to overcome the deficiencies in their Second Amended Complaint.  (Doc. No. 108 at 4.)  The Court agrees.

In the Third Amended Complaint, Plaintiffs allege virtually no facts related to Secretary Turzai and therefore have failed to state a claim against him.  Plaintiffs merely allege that the day after the special election, the state legislative branch in Harrisburg and the leadership team, including Speaker Turzai, held a news conference.  (Doc. No. 91 at 2.)  Beyond this sole allegation, Plaintiffs allege no other facts related to Speaker Turzai.  As the Court explained in its previous Opinion, Speaker Turzai cannot be held liable under a theory of respondeat superior but must have had some personal involvement in the alleged misconduct.  (Doc. No. 83 at 49 (citing Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 71 (3d Cir. 2011)).  Because Plaintiffs once again have failed to allege any actionable conduct on the part of Speaker Turzai, the claims against him will be dismissed.

---

[9]   Defendant Vazquez also filed a Motion to Strike the allegation in the Third Amended Complaint that his counsel perjured himself by making a legal argument before the Court and in his original Motion to Dismiss.  (Doc. No. 106-1 at 2 n.1.)  Defendant Vazquez moves the Court to strike these allegations from the Third Amended Complaint under Federal Rule of Civil Procedure 12(f) as "immaterial, impertinent, or scandalous matter."  (Id.; see Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter.").)  Because the Third Amended Complaint will be dismissed in its entirety, the Motion to Strike will be denied as moot.

**C.      Claims Against Former Secretary Cortés and the Individual City Commissioners Will Be Dismissed Because Plaintiffs Have Not Plausibly Alleged that They Were Personally Involved in the Wrongdoing or that They Failed to Train or Supervise**

Former Secretary Cortés and the individual City Commissioner argue that the Third Amended Complaint contains no factual allegations directed at them, that a lawsuit against them cannot be based on underlined respondeat superior, and therefore that Plaintiffs once again have failed to state a claim.  (Doc. Nos. 107-1; 110-2.)  The Court agrees.

The Third Amended Complaint contains no factual allegations directed at Secretary Cortés or the individual City Commissioner and therefore has failed to cure the deficiencies in the Second Amended Complaint.  As the Court noted in its prior Opinion, Secretary Cortés and the individual City Commissioners cannot be held liable under a theory of respondeat superior, and Plaintiffs have failed to plausibly allege that they had any personal involvement in the wrongful conduct that occurred at the special election.  (Doc. No. 83 at 53-56.)  Plaintiffs also have failed allege a plausible claim that Secretary Cortés and the individual City Commissioners failed to properly train or supervise the election.  (Id.)  And Plaintiffs have not pointed to a policy or practice that these parties failed to implement that created a risk of constitutional violations.  (Id.)  For these reasons and those stated in the January 23, 2018 Opinion, the claims against Secretary Cortés and the individual City Commissioners will be dismissed.[10]

---

[10]   To the extent Plaintiffs intended to bring claims against the City Commissioners in their official capacity, these claims will be dismissed.  As the Court concluded in its previous Opinion, suits against state actors in their official capacity "generally represent only another way of pleading an action against the entity of which the officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Thus, as before, any claims against the City Commissioners in their official capacity are duplicative of the claims against the City Commissioners' Office and once again will be dismissed.

**D.      Claims Against the City Commissioners' Office Will Be Dismissed Because Plaintiffs Have Not Plausibly Alleged a Failure to Train or Supervise**

The City Commissioners' Office notes that it is not a legal entity separate from the City of Philadelphia and therefore any claims against it are, in reality, claims against the City.  (Doc. No. 110-2 at 7.)  Even construing the claims against it as claims against the City, the City Commissioners' Office submits that the claims against it in the Third Amended Complaint should be dismissed because Plaintiffs have pled no allegations that could satisfy the standard for municipal liability set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978). (Id. at 7-8.)  The Court agrees.

Construing the claims against the City Commissioners' Office as claims against the City, Plaintiffs have again failed to allege a plausible claim against it.  As explained in the prior Opinion, a municipality may be liable where their alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is informally adopted by custom.  (Doc. No. 83 at 57 (quoting Monell, 436 U.S. at 690).)  Importantly, a municipality cannot be held liable under a theory of respondeat superior.  (Id. at 58 (quoting Monell, 436 U.S. at 691).)

Here, Plaintiffs again have failed to identify a policy or custom on the part of the City Commissioners' Office or the City of Philadelphia that caused the alleged constitutional violations.  The Third Amended Complaint, like the Second Amended Complaint, fails to meet the standard of Monell.  For this reason and for the reasons stated in the Court's previous Opinion, the claims against the City Commissioners' Office will be dismissed.

**E.**     **Claims Against Leslie Acosta and the Committee of Seventy
Will Be Dismissed Because Plaintiffs Have Not
Plausibly Alleged Claims Against Them**

Because Plaintiffs have failed to state a plausible claim against Leslie Acosta and the
Committee of Seventy, the claims against them will be dismissed as well.  Although Leslie
Acosta and the Committee of Seventy have not filed a Motion to Dismiss, the Court again will
sua sponte dismiss the claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure
to state a claim.  As noted in the Court's prior Opinion, a Court may dismiss a complaint filed in
forma pauperis "at any time if the court determines that . . . the action . . . fails to state a claim on
which relief may be granted."  § 1915(e)(2)(B)(ii).

**1.**     **Leslie Acosta Will Be Dismissed as a Defendant**

In their Second Amended Complaint, Plaintiffs merely alleged that Leslie Acosta was not
seated in the General Assembly due to a prior felony conviction.  (Doc. No. 11 ¶ 9.)  This time,
Plaintiffs allege that Leslie Acosta "played a significant role in the corruption of the special
election," set up a meeting with the committee people and Ward Leaders, and endorsed Freddy
Ramirez as a candidate.  (Doc. No. 91 at 2, 4.)  Plaintiffs note that Ramirez did not run in the
special election because it was revealed that he did not live in the 197th District.  (Id. at 2.)

The facts alleged in the Third Amended Complaint regarding Leslie Acosta fail to state a
claim for relief.  First, the allegation that Leslie Acosta played a significant role in the corruption
of the special election is a conclusory one that does not state a claim for relief.  See Iqbal, 556
U.S. at 678.  Second, the fact that Leslie Acosta set up a meeting with committee people and
Ward leaders to endorse Ramirez as a candidate does not support a claim that she caused the
election to be held in violation of Plaintiffs' constitutional rights.  Freddy Ramirez ultimately did
not run in the special election because he was not a resident of the 197th District.  Instead,
Emilio Vazquez ran as a write-in candidate.  The fact that Leslie Acosta originally endorsed

Ramirez does not "allow the court to draw the reasonable inference that [Leslie Acosta] is liable for the misconduct alleged." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 239, 262 n.14 (3d Cir. 2013).  Based on the few facts alleged in the Third Amended Complaint regarding Leslie Acosta, Plaintiffs again have failed to state a claim, and the claims against her will be dismissed.

### 2.    The Committee of Seventy Will Be Dismissed as a Defendant

As an initial matter, as the Court noted in its prior Opinion, to date Plaintiffs have failed to serve process on the Committee of Seventy in accordance with Federal Rule of Civil Procedure 4(m).  (Doc. No. 83 at 24 n.25, 75.)  Regardless, any claims against the Committee of Seventy will be dismissed on the merits because Plaintiffs have failed to plausibly allege a claim against it.

As noted, Plaintiffs merely allege that the Committee of Seventy is a nonprofit entity whose purpose is to oversee elections and ensure that everything is run properly.  (Doc. No. 91 at 4.)  They allege that during the special election, the Committee of Seventy was "nowhere to be found when it came to overseeing and making sure the integrity of the . . . special election was ran honestly and fairly for all the people of Philadelphia."  (Id.)

Here, Plaintiffs' Third Amended Complaint against the Committee of Seventy, filed in forma pauperis, fails to state a claim for numerous reasons.  First, as a nonprofit, nonpartisan organization, the Committee of Seventy, like the Democratic Committee, is not a state actor but is a private organization.  (See Doc. No. 83 at 37-42.)  Because it is not a state actor, it could only be held liable under § 1983 if it participated in joint action with the state or exercised powers traditionally reserved to the state.  (Id. at 37; Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017); Max v. Republican Comm. of Lancaster Cty., 587 F.3d 198, 200 (3d Cir. 2009).)  Plaintiffs have not alleged that the Committee of Seventy participated in joint action with the state or exercised powers traditionally reserved to it, and thus the claims against it fail.

Second, even if the Committee of Seventy were a state actor, Plaintiffs have failed to allege a plausible claim for failure to train or supervise.  Like the other Defendants in this case, the Committee of Seventy cannot be held liable on a theory of respondeat superior.  To state a claim, Plaintiffs were required to plead that the Committee of Seventy's conduct in failing to train or supervise amounted to deliberate indifference to the voters.  See Connick v. Thompson, 563 U.S. 51, 61 (2011).  Plaintiffs have merely pled the conclusory allegation that the Committee of Seventy failed to oversee the election, which is insufficient to state a claim against it.  Accordingly, the claims against it will be dismissed.[11]

### F. Plaintiff Acosta's Motions for Default and Default Judgment Will Be Denied

Finally, Plaintiff Acosta has filed a Motion for Default against all Defendants for failing to respond to an Affidavit of Truth he filed (Doc. No. 114) and a Motion for Default Judgment against Defendant Leslie Acosta for failing to respond to the Third Amended Complaint (Doc. No. 123).  Both Motions will be denied.

Entering default judgment requires a two-step process.  See Fed. R. Civ. P. 55(a), (b). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead

---

[11]  The Court will not grant Plaintiffs leave to amend their Complaint again because doing so would be futile.  A court must grant leave to amend absent "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility."  Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  And in civil rights cases, the court "must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (citation omitted); see also Mullin, 875 F.3d at 151; Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, Plaintiffs have amended their Complaint a total of three times, filing the Third Amended Complaint after the Court issued a detailed Opinion explaining the deficiencies in the Second Amended Complaint.  Plaintiffs have repeatedly failed to cure the deficiencies by amendments this Court has previously allowed.  For this reason, leave to amend will not be granted, and the Third Amended Complaint will be dismissed with prejudice.

or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, Federal Rule of Civil Procedure 55(b)(2) "provides for entry of a default judgment in favor of a plaintiff where a defendant has failed to plead or otherwise defend." Catanzaro v. Fischer, 570 F. App'x 162, 165 (3d Cir. 2014) (per curiam) (citing Fed. R. Civ. P. 55(b)(2)).

> Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct.

Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). "The matter of whether to enter default judgment 'is left primarily to the discretion of the district court.'" Juan v. Sanchez, 339 F. App'x 182, 187 (3d Cir. 2009) (quoting Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984)).

In the Motion for Default against all Defendants, Plaintiff Acosta states that Defendants did not respond to his April 17, 2018 Affidavit of Truth. (Doc. No. 114 at 1.) The Court will not grant Default on this basis. Defendants have not "failed to plead or otherwise defend." See Fed. R. Civ. P. 55(a). Rather, Defendants filed Motions to Dismiss the Third Amended Complaint. They were under no obligation to respond to Plaintiff Acosta's Affidavit of Truth after they had filed Motions to Dismiss. Accordingly, the Motion for Default (Doc. No. 114) will be denied.

In the Motion for Default Judgment against Leslie Acosta, Plaintiff Acosta requests default judgment against her because she has not filed a response in this case. (Doc. No. 123 at 1.) The Court will exercise its discretion not to grant a default judgment against Leslie Acosta because, on balance, the three factors weigh against entry of default judgment. Leslie Acosta has a litigable defense to the claims against her since the Third Amended Complaint does not contain sufficient allegations against her, and she would have prevailed on a Motion to Dismiss. In

addition, there is no indication that her delay in responding is due to culpable conduct.  For these reasons, Plaintiff Acosta's Motion for Default Judgment (Doc. No. 123) will be denied.

## V.      CONCLUSION

For all the reasons stated above, Defendants' Motions to Dismiss (Doc. Nos. 105-110) will be granted, and Plaintiff Acosta's Motions for Default and Default Judgment (Doc. Nos. 114, 123) will be denied.  An appropriate Order follows.